IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

USDC CLERK, CHARLESTON, SC
2007 NOV 19 A 11: 14

| | |
|---|---|
| Clarence T. Fox, Jr., ) | C. A. No. 2:06-1785-GRA-RSC |
| ) | |
| Plaintiff, ) | |
| ) | |
| -versus- ) | **REPORT AND RECOMMENDATION** |
| ) | |
| John J. LaManna, in his ) | |
| individual capacity; and ) | |
| R. McLafferty, in his ) | |
| individual capacity; Brian ) | |
| Finnerty, in his individual ) | |
| capacity; Brian Gilmore, in ) | |
| his individual capacity, ) | |
| ) | |
| Defendants. ) | |

This Bivens[1] civil rights action brought by a federal prisoner, proceeding pro se and in forma pauperis on April 27, 2006, in the District Court for the District of Columbia and subsequently transferred to this district on June 14, 2006, is before the undersigned United States Magistrate Judge for a report and recommendation on the defendants' motion for summary judgment filed July 10, 2007. 28 U.S.C. § 636 (b).

The plaintiff, Clarence T. Fox, Jr., filed an amended complaint on March 7, 2007, against John J. LaManna, the Warden

---

[1] Section 1983 is not applicable in suits filed against any federal officials. However such relief is available: "Federal courts have power under 28 U.S.C. § 1331 (1994) to award damages occasioned by infringements by federal officials of constitutionally protected interests." Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

1

of Federal Correctional Institution (FCI) Edgefield, South Carolina, and Robert McLafferty, the Special Investigative Agent at FCI Edgefield, Brian Finnerty, a Lieutenant at FCI Edgefield who had been the Lieutenant in charge of the Special Housing Unit (SHU) at FCI Edgefield at some times relevant to the complaint, and Brian Gilmore, the Captain at FCI Danbury who had been the Lieutenant in charge of the SHU at FCI Edgefield at some times relevant to the complaint. All defendants are sued in their individual capacities, and Plaintiff seeks damages in the amount of $2,000,000.00 from each defendant.

Fox brought two (2) causes of action.[2] In one cause of action, Fox alleges that on June 9, 2005, he filed a grievance with Federal Bureau of Prisons (BOP) officials at the FCI Edgefield, South Carolina, complaining that he had been verbally threatened with physical violence by one staff member, Officer Bennie Battles, and that yet another staff member, Officer Karen Battles[3], told staff and inmates that Fox was an informant. (Complaint, ¶ 7). Fox claims that, in retaliation for filing the grievance, he was placed in Administrative Detention in the Special Housing Unit (SHU) on June 15, 2005, and held there until March 8, 2006. He was then transferred to FCI Estill which is

---

[2] A third cause of action was stricken from the complaint on consent of all parties at a hearing before the undersigned on March 7, 2007.

[3] Karen Battles is Bennie Battles' wife.

2

fifteen (15) miles farther from his home in Raleigh, North Carolina, than is FCI Edgefield. He complains that the placement and transfer were ordered to retaliate against him for bringing the grievance in violation of his first amendment right to file a grievance. (Complaint, ¶¶ 8 - 13). This cause of action seeks damages from Defendants LaManna and McLafferty.

In his other cause of action, Fox further contends that while he was housed in the SHU he was not given BOP mandated reviews and hearings to assess the propriety of his continued placement there. Plaintiff believes he was entitled to the reviews by 28 C.F.R. § 541.22 and BOP Program Statement 5270.7, and his Fifth Amendment's due process guarantees.[4] This cause of action seeks damages from Gilmore and Finnerty.

The defendants filed a motion for summary judgment on July 10, 2007. On July 12, 2007, the plaintiff was provided a copy of the defendants' motion for summary judgment, affidavits, and exhibits. He was also given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir.

---

[4] In his opposition to the defendants' motion the plaintiff accused the defendants of mischaracterizing this claim. "It is Plaintiff's position that he was denied Due Process because he was not afforded any type of hearing during his confinement in administrative detention (Special Housing Unit), not because of the length of time he spent in administrative detention (Special Housing Unit)." Opposition at page 8.

1975). Plaintiff did not oppose the motion despite having been given numerous continuances. On October 16, 2007, Plaintiff was ordered to respond to the summary judgment motion against him or the matter could be dismissed for failure to prosecute. On November 5, 2007, Plaintiff filed his opposition to the motion with affidavits and exhibits. On November 7, 2007, Plaintiff filed a supplement to his opposition to the defendants' motion with an exhibit. Hence it appears consideration of the motion is appropriate.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof. Id., 477 U.S. at 322. The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing

summary judgment must then point to facts evidencing a genuine issue for trial. Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants. See, Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor. Id., 477 U.S. at 252.

## FACTS

The facts for purposes of the defendants' motion, either undisputed or taken in the light most favorable to the plaintiff as the non-moving party, and all reasonable inferences therefrom, to the extent supported by the record are as follow.

On or about June 9, 2005, the plaintiff sent a request for an administrative remedy, a grievance, to the BOP Regional

Office, asserting the matter was of a sensitive nature and should bypass the Warden. (Docket No. 8-3, pp. 2-3). In that grievance, the plaintiff complained that he was threatened on June 9, 2005, at 2:00 p.m. by Correctional Officer Bennie Battle, who told Plaintiff that he would physically assault Plaintiff if Plaintiff ever "disrespected" Battle's wife Karen Battles, another Correctional Officer at FCI Edgefield, again. Id. He also claimed that Karen Battles told other staff and inmates that Plaintiff was an "informant." Am. Comp.

This grievance was rejected by the BOP Regional Office and Plaintiff was directed to file the matter at FCI Edgefield with defendant Warden LaManna. (Docket No. 8-3, p. 8). Plaintiff provided a copy of the grievance to the Warden and the Warden forwarded the grievance to defendant McLafferty for investigation on June 15, 2005. McLafferty is employed as the Special Investigative Agent at the United States Department of Justice at FCI Edgefield. It is McLafferty's job to conduct investigations into allegations involving staff and inmates at FCI Edgefield. McLafferty supervises additional investigative staff and is also the liaison with outside law enforcement and with the BOP's Office of Internal Affairs.

McLafferty believed that Plaintiff should be placed in Administrative Detention in the SHU. Administrative Detention is a non-punitive housing status, 28 C.F.R. § 541.22, in which

6

inmates are moved to a more secure housing area pending investigation of an inmate's allegations. Plaintiff was provided written notice of the reasons for his placement into Administrative Detention on June at 2:30 P.M. on the day he was moved there. His notice indicated that he was moved "pending an investigation of a violation of Bureau regulations. ... It is this officer's decision based on all the circumstances that the above named inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates, or to the security or orderly running of the institution ... pending an SIS Investigation." It was signed by D. Bryant, Lieutenant. Def. ex. 2.

Subsequent to this placement, Plaintiff filed additional grievances with the Warden, Regional Director and National Inmate Appeals section of the Office of the General Counsel. His status did not change as a result of these grievances. Def. ex. I, ¶7.

McLafferty asked for and received authorization to proceed with an investigation from the Office of Internal Affairs. McLafferty affied that he had Plaintiff moved to the more secure SHU because it "allows staff to control the people that have access to the individual, thereby more easily protecting him from harm." McLafferty also affied that the fact that Plaintiff filed a grievance did not in any way motivate his placement in SHU and that he would have recommended placement in SHU simply as a

7

precaution for any inmate who was allegedly threatened by a staff member. Exhibit I, Declaration of R. McLafferty. Plaintiff believes that he was placed in SHU in retaliation for his having brought a grievance in the first place.

Plaintiff makes much of the fact that while he was housed in the SHU he worked as an orderly and at one point Officer Battles was briefly assigned to the SHU to fill in for another officer. Plaintiff complained about it to LaManna and McLafferty. McLafferty investigated; he found that Battles had been assigned to the SHU in a job that allowed no one-on-one contact with Plaintiff. McLafferty took steps to ensure that Battles was not assigned to the SHU again until the investigation was complete. Battles was not assigned to the SHU again.

Thereafter, McLafferty and/or his staff conducted a lengthy investigation into Plaintiff's allegations against the correctional officers, Bennie and Karen Battles. The investigation revealed no evidence that Plaintiff's allegations against the Battles were true. At the conclusion of the investigation, McLafferty did what he generally did when there is a complaint of serious misconduct by correctional officers. That is, he recommended that Plaintiff be transferred to another FCI. He affied that he did this "in order to prevent future claims of retaliation." Id.

Consistent with McLafferty's desire to prevent future claims of retaliation, Warden LaManna approved Plaintiff's transfer out of FCI Edgefield because "Inmate Fox made false allegations of staff misconduct against two staff members at this facility." See, "Close supervision/Post -Discipline Referral" form dated February 21, 2006. Plaintiff was transferred to FCI Estill which is about fifteen (15) miles further away from Plaintiff's Raleigh, North Carolina home than is FCI Edgefield. Again, Plaintiff believes that he was transferred to FCI Estill by LaManna and McLafferty in retaliation for his having brought a grievance in the first place.

Plaintiff also believes that his due process rights were violated as a result of the alleged failure of defendants Gilmore and Finnerty to comply with 28 C.F.R. § 541.22 and BOP Program statement 5270.07 which call for periodic reviews of inmates in Administrative Detention. (28 C.F.R. § 541.22(c)). Specifically, the status of each inmate placed in the SHU is to be reviewed on paper within three work days of placement in that unit. 28 C.F.R. § 541.22(c)(1), Exhibit F, ¶4, and Exhibit G, ¶4. After seven days, the inmate is to be provided a more formal review concerning the placement. Id. Thereafter, each inmate in the SHU is to be reviewed every seven days outside the inmate's presence. Id. A more in-depth review is to be conducted every thirty days in the inmate's presence. Id. Special Housing

Review forms completed contemporaneously by Finnerty and Gilmore indicated Plaintiff was physically present during the seven day review and each of the 30-day reviews thereafter throughout his period in the SHU. Exhibit C, Special Housing Review forms for the relevant period; Exhibit F, ¶ 5; and Exhibit G, ¶5. The relevant "Special Housing Review" forms, BP-S295.052, indicate when each review was done, whether Plaintiff was present, that Plaintiff was seen daily by medical staff and a responsible person designated by the Warden, that he had received the prescribed exercise, and that other conditions of confinement were proper. They are signed by the reviewing officers and made part of the plaintiff's file. Finnerty and Gilmore affied that they complied in whole with the aforementioned CFR and BOP policy statement.

Plaintiff affied that Finnerty and Gilmore perjured themselves in their affidavits, that he was never provided any type of review whatsoever, and that the defendants "falsely documented" the Special Housing Review forms.

Again, Plaintiff does not complain about the amount of time he spent in the SHU or about any conditions in the SHU. Nor does he complain that his SHU confinement or transfer prevented him from filing more grievances or prevented his access to the courts; indeed the record is replete with evidence of a plethora of grievances, letters to government officials including a

senator, letters of protest sent by his wife to the Warden, and other means of complaint. Further, the plaintiff does not complain, nor could he, that he was unable to access the courts.

## QUALIFIED IMMUNITY

Defendants argue that they are entitled to qualified immunity from suit in their individual capacities. The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow</u>, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional

11

> violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824, 116 S.Ct. 89, 133 L.Ed.2d 45 (1995).

### QUALIFIED IMMUNITY ON THE CLAIM OF RETALIATION

A review of the record and relevant case law reveals that LaManna and McLafferty are not entitled to qualified immunity on the first cause of action for retaliation, but Finnerty and Gilmore are entitled to qualified immunity on the second cause of action for failure to follow BOP housing review policies.

As to the retaliation claim, the federal courts have long recognized a prisoner's right to seek administrative or judicial remedy of conditions of confinement, see, Lewis v. Casey, 518 U.S. 343, 349, 116 S.Ct. 2174, 2179 (1996), as well as the right to be free from retaliation for exercising this right. See, Matzker v. Herr, 748 F.2d 1142, 1150-51 (7th Cir. 1984); Buise v. Hudkins, 584 F.2d 223, 229 (7th Cir. 1978); see also, Penrod v. Zavaras, 94 F.3d 1399, 1404-05 (10th Cir. 1996) ("[Q]ualified immunity ... does not apply in this case because the jurisprudence prohibiting retaliatory acts against prisoners for reporting grievances is well-established."). In the instant case, moreover, qualified immunity cannot be premised on the rationale that a particular form of retaliation has yet to be condemned by the courts. Retaliation against constitutionally

12

protected conduct is actionable regardless of whether the defendants' actions independently violate the constitution. A prison official in McLafferty's and LaManna's position therefore would have been on notice that any retaliation, whatever its shape, could give rise to liability. Harlow's standard of objective reasonableness does not require that "the very action in question has previously been held unlawful," but only that "in light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039 (1987). It appears that the qualified immunity defense simply does not dispose of Plaintiff's retaliation claim.

## QUALIFIED IMMUNITY ON THE CLAIM THAT HE WAS NOT GIVEN REVIEWS WHILE IN SHU

On the other hand, Plaintiff's allegation that Gilmore and Finnerty violated his due process rights by not conducting housing reviews fails because these defendants are entitled to qualified immunity from suit in their individual capacities.

Plaintiff alleges that Gilmore and Finnerty violated his constitutional right to due process because, according to Plaintiff, they did not conduct reviews required by BOP regulations, in which he enjoyed a liberty interest. However, these defendants are entitled to qualified immunity because prison regulations requiring reviews cannot confer a liberty interest protected by due process given the Supreme Court's admonition that such liberty interests only inhere in regulations

13

that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995). The regulations here are of general application and contemplate routine inmate placement in non-punitive administrative segregation. They thus do not, by definition, impose "atypical and significant hardship on the inmate" as defined in the Sandin decision.

Therefore, Plaintiff has not stated a constitutional deprivation at all and the qualified immunity inquiry ends as a result. See, e.g., Saucier v. Katz, 533 U.S. 194 at 201 (2001). Finnerty and Gilmore should be dismissed from the action.

## LAW APPLICABLE TO CLAIM OF RETALIATION FOR FILING A PRISON GRIEVANCE AND DISCUSSION

Plaintiff's second claim is that Defendants LaManna and McLafferty retaliated against him for filing a grievance by placing him in the SHU and, following the investigation into his allegations, transferring him from FCI Edgefield to FCI Estill. In order to state a retaliation claim, a prisoner "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). He must allege sufficient facts to warrant concern that the alleged retaliation might have a chilling effect on the exercise of the right seek administrative relief or to

access the courts and show that he suffered more than <u>de minimis</u> inconvenience. <u>ACLU v. Wicomico</u>, 999 F.2d 780 at 785-86 & n. 6 (4th Cir. 1993). While the inmate need not succumb entirely or even partially to the threat, it must be demonstrated that the retaliation was intended to limit the prisoner's right of access to the court and was reasonably calculated to have that effect. <u>Hudspeth v. Figgins</u>, 584 F.2d 1345, 1348 (4th Cir. 1978). Additionally, the plaintiff must allege specific facts supporting his claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. <u>Adams</u>, 40 F.3d at 75. Conclusory allegations of retaliation are simply insufficient to support a retaliation claim or establish the necessary element of adversity. <u>ACLU v. Wicomico County</u>, 999 F.2d 780, 785 (4th Cir. 1993). Further, the court treats claims of retaliation in the prison context with skepticism. <u>Cochran v. Morris</u>, 73 F.3d 1310, 1317 (4th Cir. 1996).

Here, Plaintiff makes nothing more than "bare assertions of retaliation." <u>Adams</u>, 40 F.3d at 75. Plaintiff claims that the placement in the SHU was in retaliation for his grievance. He has not forecast any evidence whatsoever from which a reasonable jury could conclude that his subjective opinion is, in fact, correct.

In the instant case, Plaintiff wrote a grievance to Regional staff in which he reported that he was threatened with physical

15

harm by a staff member. When FCI Edgefield staff became aware of the complaint, because he forwarded a copy to Warden LaManna, the matter was referred to defendant McLafferty for investigation. Only after discussing the allegations with Plaintiff did McLafferty determine it prudent to place Plaintiff into non-punitive administrative segregation in the SHU during the investigatory process. This placement is routinely done to ensure the safety of the inmate, because the inmate alleges his safety has been threatened. There is no reason to conclude that the action was retaliatory; instead, it was a logical result of Plaintiff's allegation and BOP officials fulfilling their own duty to protect all prisoners in their care.

Further, prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. Hewitt v. Helms, 459 U.S. 460, 468, 103 S.Ct. 864 (1983)(no constitutional right under the Due Process Clause to a particular security classification or prison placement). Likewise, an inmate does not have a constitutional right to be confined in a particular location. See, Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741 (1983); Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532 (1976).

It appears that Plaintiff, as the party opposing summary judgment, has failed to point to facts evidencing a genuine material issue for trial. Fed.R.Civ.P. 56(c); see also, Anderson

16

v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986). The defendants are entitled to judgment as a matter of law.

## CONCLUSION

Accordingly, it is recommended that summary judgment should be granted. It is also recommended that all other outstanding motions should be denied as moot.

                                      Respectfully Submitted,

                                      Robert S. Carr
                                      United States Magistrate Judge

Charleston, South Carolina
November 19, 2007

17

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985).